UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCISCO VILLANUEVA, a/k/a<br>"Gumby," a/k/a "Pancho,"<br><br>Defendant. | CR. 17-50049-02-JLV<br><br>ORDER |

## INTRODUCTION

A grand jury indicted Francisco Villanueva, together with three other defendants, in a multiple count superseding indictment.   (Docket 129).   Mr. Villanueva is charged with count I: first degree premeditated murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; count II: first degree felony murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; count III: conspiracy to commit assault in violation of 18 U.S.C. §§ 113(a)(3), 1152, 1153 and 371; count IV: use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and count VI: prohibited person in possession of ammunition in violation of 18 U.S.C. § 922(g)(1).   Id.

Pending before the court is defendant's motion to suppress all evidence seized from his residence.   (Docket 107).   The United States opposes defendant's motion.   (Dockets 150 & 266).

Defendant's suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's April 1, 2018, standing order. An evidentiary hearing was held on August 29-30, 2018. (Dockets 248 & 251). Following post-hearing briefing, Magistrate Judge Wollmann issued a report and recommendation ("R&R") on defendant's motion to suppress. (Docket 289). The magistrate judge recommended defendant's motion to suppress "be denied in full." Id. at p. 16. The defendant timely filed his objections to the R&R. (Docket 293). The government filed a response to defendant's objections. (Docket 298).

For the reasons stated below, the court finds the R&R is an appropriate application of the law to the facts presented by the parties at the suppression hearing. Defendant's objections are overruled and the R&R is adopted in its entirety.

## **DEFENDANT'S OBJECTIONS**

Defendant's objections to the R&R are summarized as follows:

1.   Mr. Villanueva objects generally to all factual findings and legal conclusions made by the magistrate judge.

2.   Mr. Villanueva objects to the magistrate judge's conclusion that Tenth Circuit and Eighth Circuit case law are the same on the objective findings required to support a protective sweep.

3.   Mr. Villanueva objects to the magistrate judge's finding that during an earlier shooting the Metro Gang Task Force

contacted the Denver Police Department about defendant's arrest warrant.

4.   Mr. Villanueva objects to the magistrate judge's finding that the warrantless entry into his home was the result of his arrest inside his home.

5.   Mr. Villanueva objects to the magistrate judge's conclusion that the officers were uncertain as to whether there were other dangerous people inside the home after his arrest.

6.   Mr. Villanueva objects to the magistrate judge's lack of objective findings to support a protective sweep of his home.

(Docket 293).   "For the foregoing reasons," Mr. Villanueva argues "the district court should not accept the Magistrate Court's [R&R] . . . and should grant Defendant's Motion to Suppress."   Id. at p. 17.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   Id.   See also Fed. R. Crim. P. 59(b)(3).   The court completed a de novo review of those portions of the R&R to which objections were filed.

Each of defendant's objections will be separately addressed.

## ANALYSIS

The court completed a de novo review of the transcripts of the suppression hearing, the three video and audio recordings ("video recording")

3

produced by three law enforcement officers' body cameras and two affidavits in support of search warrants.   (Dockets 248 & 251 and suppression hearing Exhibits 1-3, 102 & 106; <u>see</u> <u>also</u> Docket 236).   The court takes judicial notice of the arrest warrant for the defendant issued on November 22, 2017, in this case.   (Docket 50).   Unless otherwise indicated, the court's findings of fact are consistent with the findings made by the magistrate judge.

1.   MR. VILLANUEVA OBJECTS GENERALLY TO ALL FACTUAL FINDINGS AND LEGAL CONCLUSIONS MADE BY THE MAGISTRATE JUDGE.

"Congress has mandated that the district court give *de novo* review to those portions of a Magistrate's report and recommendation to which objections are made."   <u>Belk v. Purkett</u>, 15 F.3d 803, 815 (8th Cir. 1994) (referencing 28 U.S.C. § 636(b)(1)).   "There is a court-created exception in some circuits: '. . . [T]he district court need not conduct *de novo* review when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.' "   <u>Id.</u> (citing <u>Johnson v. Knable</u>, 934 F.2d 319 (4th Cir. 1991) (unpublished opinion) (citing <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47-48 (4th Cir. 1982); <u>United States v. Merz</u>, 376 U.S. 192, 199, 84 (1964); <u>Pendleton v. Rumsfeld</u>, 628 F.2d 102, 105-06 (D.C. Cir. 1980)).   "There is language in an Eighth Circuit case which indicates this Circuit's approval of such an exception."   <u>Id.</u> (referencing <u>Branch v. Martin</u>, 886 F.2d 1043 (8th Cir. 1989) ("In the present case, plaintiff's objections to the magistrate's factual

conclusions were timely filed and specific enough to trigger *de novo* review).

See, e.g., Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) (per curiam) (no *de novo*

review if objections are untimely or general)"). "[D]e novo review is not

required 'when a party makes general and conclusory objections that do not

direct the court to a specific error in the magistrate judge's proposed findings

and recommendations.'" Hudson v. Gammon, 46 F.3d 785, 786 (8th Cir.

1995) (citing Belk, 15 F.3d at 815) (citations omitted).

The court will address Mr. Villanueva's specific objections to the R&R as

they are "certainly definite enough to require de novo review." Id. (citing Belk,

15 F.3d at 815). The court is not compelled to evaluate defendant's

generalized and conclusory objection.

Defendant's first objection to the R&R is overruled.

2.      MR. VILLANUEVA OBJECTS TO THE MAGISTRATE JUDGE'S
        CONCLUSION THAT TENTH CIRCUIT AND EIGHTH CIRCUIT
        CASE LAW ARE THE SAME ON THE OBJECTIVE FINDINGS
        REQUIRED TO SUPPORT A PROTECTIVE SWEEP

Mr. Villanueva argues the magistrate judge should have applied the

standard of the United States Court of Appeals for the Tenth Circuit in United

States v. Nelson, 868 F.3d 885 (10th Cir. 2017) as opposed to the standard of

the United States Court of Appeals for the Eighth Circuit in United States v.

Alatorre, 863 F.3d 810 (8th Cir. 2017). (Docket 293 at pp. 7-13). Mr.

Villanueva submits "the warrantless entry was a violation of Prong Two of the

[Maryland v. Buie, 494 U.S. 325 (1990)] standard as the Government cannot

meet its burden as properly described in [Nelson, 868 F.3d 885]." Id. at p. 10.

Defendant argues Nelson is the proper standard:

> In Buie, the Court recognized two exceptions to the general rule that police must obtain a warrant to search a home. Under the first exception (Prong One) the police may, in conjunction with an arrest in a home, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." . . . Under the second exception (Prong Two), police may conduct a "protective sweep" beyond areas immediately adjoining the arrest if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."

(Docket 293 at pp. 6-7) (citing Buie, 494 U.S. at 334-35). Mr. Villanueva

contends Nelson compels the following analysis:

> Under Prong Two, the government is required to articulate specific facts giving rise to the inference of a dangerous third person's presence. [Buie, 494 US at 337]. As we've previously explained, "there could always be a dangerous person concealed within a structure. But that in itself cannot justify a protective sweep, unless such sweeps are to be permitted as a matter of course. . . ." United States v. Carter, 360 F.3d 1235, 1242-43 (10th Cir. 2004); see United States v. Roof, 103 Fed. Appx. 652, 658 (10th Cir. 2004) (unpublished) ("A mere absence of information about whether anyone remains in a home does not justify a protective sweep."). In short, " '[n]o information' cannot be an articulable basis for a sweep that requires information to justify it in the first place." United States v. Colbert, 76 F.3d 773, 778 (6th Cir. 1996). Accordingly, if the deputies had no knowledge regarding the potential presence of a third person, then the government is per se unable to make the affirmative showing that Buie requires.

Id. at pp. 8-9. Mr. Villanueva believes Nelson supports his argument that the

magistrate judge "failed to identify any scene specific facts which gives rise to

the inference that a dangerous person was inside the apartment." Id. at p. 11. "As for the unattended sleeping child," Mr. Villanueva argues "the Magistrate Court has never provided a single case nor authority supporting the legal conclusion that an unattended child in and of itself authorizes warrantless entry into a home." Id. at p. 9.

The government opposes Mr. Villanueva's objection. (Docket 298). The government "agrees with the [R&R] that, in this particular area of the law, there is no split between the 8th and 10th Circuits. . . . Both have adopted substantially the same standard outlined in [Buie], which addresses in-house arrests." Id. (referencing Alatorre, 863 F.3d at 814; United States v. Cavely, 318 F.3d 987, 995 (10th Cir. 2003)).

In the choice of law section of the R&R, the magistrate judge analyzed this issue. (Docket 289 at pp. 7-10). The magistrate judge concluded:

> [S]ignificant differences do not exist between Tenth Circuit and Eighth Circuit law. . . . The Tenth Circuit case which Defendant claims should control this issue [Nelson, 868 F.3d at 888-91] directly relied on . . . Buie, 494 U.S. 325 . . . in reaching its decision . . . . In fact, the Eighth Circuit cited a Tenth Circuit decision in addressing a case factually similar to this one. . . . [Alatorre, 863 F.3d at 814] (citing [Cavely, 318 F.3d at 995-96]). Because no significant differences exist between Tenth Circuit and Eighth Circuit law on the issues presented here, a choice-of-law determination is not necessary.

Id. at pp. 9-10).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Buie, 494 U.S. at 327. The Supreme Court confines a protective sweep "to a

cursory visual inspection of those places in which a person might be hiding."
Id. The standard for justifying a protective sweep incidental to an arrest is "that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334. "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." Id. at 335-36.

Nelson acknowledges Buie established two limited exceptions to the requirement that a search warrant be issued to enter a home. Nelson, 868 F.3d at 888 ("In Buie, the Court recognized two exceptions to the general rule that police must obtain a warrant to search a home."). Rather than identify the two exceptions by those labels, Nelson identifies them as prongs. "Under the first exception (Prong One) the police may, in conjunction with an arrest in a home, 'as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" Id. (citing Buie, 494 U.S. at 334). "Under the second exception (Prong Two), police may conduct a 'protective sweep' beyond areas immediately adjoining the arrest if there are 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that

8

the area to be swept harbors an individual posing a danger to those on the arrest scene.' " Id. (citing Buie, 494 U.S. at 334). As part of this analysis, the Nelson court concluded that " '[n]o information' cannot be an articulable basis for a sweep that requires information to justify it in the first place.' . . . Accordingly, if the deputies had no knowledge regarding the potential presence of a third person, then the government is per se unable to make the affirmative showing that Buie requires." Id. at 889 (citing Colbert, 76 F.3d at 778).

Applying the principals of Buie and Nelson, the Tenth Circuit recognized "that the same exigent circumstances present in Buie can sometimes accompany an arrest just outside a residence . . . ." United States v. Banks, 884 F.3d 998, 1014 (8th Cir. 2018) (citing Cavely, 318 F.3d at 995-96). "Moreover, Buie isn't expressly limited to arrests inside the home. And it allows protective sweeps based on a reasonable belief that 'the area to be swept harbors an individual posing a danger *to those on the arrest scene*.' " Id. at 1015 (emphasis in original) (citing Buie, 494 U.S. at 334). "Further, although a sweep should last 'no longer than it takes to complete the arrest and depart the premises,' officers are also 'permitted in such circumstances to take reasonable steps to ensure their safety *after*, and while making, the arrest.' " Id. (emphasis in original) (citing Buie, 494 U.S. at 336).

In Alatorre, when the defendant "finally opened the front door," the officers, armed with an arrest warrant, "quickly placed him in handcuffs and removed him to the porch." Alatorre, 863 F.3d at 812. Defendant's girlfriend

then told the officers there was no one else inside the residence. <u>Id.</u> The court's analysis acknowledged that a protective sweep may occur "after an arrest outside of a residence." <u>Id.</u> at 814 (referencing <u>Cavely</u>, 318 F.3d at 995-96; <u>United States v. Boyd</u>, 180 F.3d 967, 975 (8th Cir. 1999) (A protective sweep is permitted even though the defendant "had already been handcuffed and taken to [another area]."); <u>United States v. Davis</u>, 471 F.3d 938, 944-45 (8th Cir. 2006) (finding that a protective sweep of the defendant's barn is permitted after he is arrested outside the barn); (other citations omitted). A residential protective sweep "is not invalid merely because [the defendant] may have been removed from the immediate area during, or preceding, the sweep." <u>United States v. Waters</u>, 883 F.3d 1022, 1026 (8th Cir. 2018) (refencing <u>Boyd</u>, 180 F.3d at 975-76; <u>Alatorre</u>, 863 F.3d at 814-15). In every case, "[t]he inquiry as to the reasonableness and validity of a protective sweep is necessarily fact-specific." <u>Alatorre</u>, 863 F.3d at 814 (citing <u>United States v. Thompson</u>, 842 F.3d 1002, 1009 (7th Cir. 2016)). The <u>Alatorre</u> court emphasized that " '[a] protective sweep is justified by the threat of accomplices launching a surprise attack during an arrest and is particularly important during an in-home arrest, due to the heightened potential for an ambush in unfamiliar surroundings.' " <u>Id.</u> (citing <u>Davis</u>, 471 F.3d at 944) (quoting <u>Buie</u>, 494 U.S. at 333).

The court agrees with the magistrate judge's conclusion there are "no significant differences . . . between Tenth Circuit and Eighth Circuit law on the issues presented" in Mr. Villanueva's case.   (Docket 289 at p. 10).

Defendant's second objection to the R&R is overruled.

3.    MR. VILLANUEVA OBJECTS TO THE MAGISTRATE JUDGE'S
       FINDING THAT DURING AN EARLIER SHOOTING THE METRO
       GANG TASK FORCE CONTACTED THE DENVER POLICE
       DEPARTMENT ABOUT DEFENDANT'S ARREST WARRANT

The magistrate judge found "[d]uring the operation, the Metro Gang Task Force ("MGTF") contacted the Denver Police Department and stated [MGTF] had a federal arrest warrant for Francisco Villanueva."   Id. at p. 4.   Defendant objects to this finding claiming that during a prior "shooting investigation or 'operation' the [MGTF] contacted the Denver Police Department concerning Defendant's arrest warrant."   (Docket 293 at pp. 2-3).   He argues the briefing by MGTF "was not ancillary to some 'shooting' investigation."   Id. at p. 3.   Mr. Villanueva argues "[a]ll law enforcement involved in carrying out the arrest were exclusively handling Defendant's arrest, they were not also involved in some other gang shooting investigation."   Id.

Reading the R&R in context, the court finds the magistrate judge was not connecting the early description of gang related shootings directly to the operation focusing on the arrest of Mr. Villanueva.   The R&R simply intended to place in context the activities of the MGTF and Denver Police Department ("DPD") to initiate their activities to arrest Mr. Villanueva.   In context, the

11

statement of the magistrate judge is most cogently read as follows: "During the operation [to arrest Mr. Villanueva], the [MGTG] contacted the [DPD] and stated [MGTF] had a federal arrest warrant for Francisco Villanueva."  (Docket 289 at p. 4).  The court adopts the magistrate judge's statement with that understanding.

Defendant's third objection to the R&R is overruled.

4.    MR. VILLANUEVA OBJECTS TO THE MAGISTRATE JUDGE'S FINDING THAT THE WARRANTLESS ENTRY INTO HIS HOME WAS THE RESULT OF HIS ARREST INSIDE HIS HOME

Turning to the specific facts of Mr. Villanueva's arrest, the court notes the defendant does not challenge the vast number of the findings made by the magistrate judge.  See Docket 293 ¶¶ 2-4, 6 & 8-12.  The court adopts the magistrate judge's factual findings subject only to those facts specifically challenged by Mr. Villanueva and resolved in this order.

The magistrate judge found "although Defendant was arrested after he stepped onto the front porch, the officer safety concerns articulated in Buie apply.  The arrest took place directly outside the home, and the officers were vulnerable to potential attacks from someone inside the residence."  (Docket 289 at p. 13).  With this finding, the magistrate judge adopted the legal analysis of an "in-home" arrest to conclude that "[i]f the officers possessed a reasonable belief that the area harbored a dangerous individual, they further were entitled to conduct a limited protective sweep of the premises."  Id.

12

(referencing <u>Buie</u>, 494 U.S. at 334).   In arriving at this conclusion, the magistrate judge examined <u>Alatorre</u>, <u>Davis</u> and <u>Boyd</u>.   <u>Id.</u> at pp. 12-13.

Mr. Villanueva objects to this finding on the basis "the warrantless entry was not the result of an 'arrest in a home.' "   (Docket 293 at p. 7) (referencing Docket 289 at pp. 12-13).   He argues <u>Alatorre</u> "did not apply [the] <u>Buie</u> exception one, i.e. 'in-home' arrest to the facts of the case."   <u>Id.</u> at p. 12.   Mr. Villanueva contends <u>Alatorre</u> "applied prong two, which requires probable cause or reasonable suspicion in that law enforcement must possess articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger."   <u>Id.</u> (referencing <u>Alatorre</u>, 863 F.3d at 814-15).   He argues "[t]his is very different that (sic) the 'in-home' arrest standard applied because that requires no probable cause or reasonable suspicion."   <u>Id.</u>

Mr. Villanueva is correct that as he came to the front door of his residence, Officer Lombardi asked him to step thorough the threshold and stand on the small porch landing.   He was immediately handcuffed while standing in that area.

In <u>Buie</u>, the defendant was arrested inside his residence.   <u>Buie</u>, 494 U.S. at 328.   The court held there was an "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who

13

could unexpectedly launch an attack." Id. at 333. The court held the officers were not required to have probable cause or even reasonable suspicion to execute a protective sweep, but rather "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334. "This is no more and no less than was required in Terry[1] and Long,[2] and as in those cases, we think this balance is the proper one." Id.

In Alatorre, the defendant was arrested and placed in handcuffs inside the residence and "removed . . . to the porch." Alatorre, 863 F.3d at 812. Contrary to defendant's argument, the Alatorre court did not require probable cause or reasonable suspicion to justify a protective sweep. Like Buie, the Alatorre court required only "articulable facts and rational inferences supporting the officers' reasonable beliefs that someone else could be inside posing a danger to them during or following the arrest." Id. at 814 (emphasis omitted) (referencing Buie, 494 U.S. at 327).

Use of the term "in-home" arrest is not limited to only those arrests which occur inside a residence, but instead includes those arrests occurring at or near an entry to the residence. See United States v. Pile, 820 F.3d 314,

_____

[1]Terry v. Ohio, 392 U.S. 1 (1968).

[2]Michigan v. Long, 463 U.S. 1032 (1983).

14

317 (8th Cir. 2016) ("Pile misreads <u>Buie</u>'s 'in-home arrest' language.  <u>See</u> [<u>Buie</u>, 494 U.S. at 337].   To be sure, the arrest in <u>Buie</u> occurred inside of a home.   But the rationale supporting the Court's recognition of the protective sweep—safety of police officers and others—may extend beyond a home's four walls, depending on the facts.").   <u>See</u> <u>also</u> <u>Cavely</u>, 318 F.3d at 995-96; <u>Banks</u>, 884 F.3d at 1015.

The "in-home" description is not used when other structures or places are the subject of a protective sweep.   <u>See</u> <u>Davis</u>, 471 F.3d 938 (barn); <u>United States v. Aguilar</u>, 743 F.3d 1144 (8th Cir. 2014) (front lawn); <u>United States v. Arzola</u>, No. 16-00290-01, 2017 WL 4837198, at *4 (W.D. Mo. Sept. 1, 2017), report and recommendation adopted, No. 4:16-CR-00290-01, 2017 WL 4819109 (W.D. Mo. Oct. 25, 2017) (inside garage); <u>United States v. Hoyos</u>, 892 F.2d 1387, 1394 (9th Cir. 1989) (back yard), *overruled on other grounds by* <u>United States v. Ruiz</u>, 257 F.3d 1030 (9th Cir. 2001); <u>United States v. Jones</u>, 193 F.3d 948, 949 (8th Cir. 1999) (common area of apartment building permitted search of apartment shared by defendant).

Defendant's objection is without merit.   The magistrate judge properly identified Mr. Villanueva's arrest as being an "in-home" arrest, subject to the first exception articulated in <u>Buie</u> and <u>Alatorre</u>.

Defendant's fourth objection to the R&R is overruled.

5.   MR. VILLANUEVA OBJECTS TO THE MAGISTRATE JUDGE'S
CONCLUSION THAT THE OFFICERS WERE UNCERTAIN AS TO
WHETHER THERE WERE OTHER DANGEROUS PEOPLE INSIDE
THE HOME AFTER HIS ARREST

Mr. Villanueva asserts the magistrate judge failed to "identify one single scene specific fact which gives rise to the inference that a dangerous person was inside the home.   The only scene specific fact that has ever been found is that a child was sleeping in the residence.   Literally nothing else."   (Docket 293 at p. 15).

The magistrate judge found "the protective sweep of the residence was justified by several *articulable facts* and *rational inferences* supporting the officers' *reasonable belief* that someone else could be inside posing a danger to them during or following the arrest." (Docket 289 at p. 14) (citing <u>Alatorre</u>, 863 F.3d at 814 (emphasis in original) (citing <u>Buie</u>, 494 U.S. at 327)).   The magistrate judge identified those factors to include:

(1)   [T]he officers knew Defendant was a member of the East Side Oldies, a violent gang known for frequent gun violence, homicides, and noncompliance with law enforcement;

(2)   [T]he officers were aware the Oldies planned to violently retaliate against the Crips that evening;

(3)   [T]he officers knew Defendant had an outstanding arrest warrant for homicide;

(4)   [G]iven the Oldies' proclivity for gun violence, guns were conceivably present in the home;

(5)   [G]iven the Oldies' known tendency to flee, cause distractions, or shoot at law enforcement, other dangerous persons

16

conceivably were in the home and prepared to engage in violence; and

(6)     [A] four-year old child was unsupervised inside the home and any violent outburst would seriously endanger the child.

Id. at pp. 14-15.   While there was no direct evidence other potentially dangerous people were in the Villanueva's residence, the magistrate judge found "considering the officers' experience with gang members in the neighborhood, coupled with the specific facts of the arrest, . . . it was entirely reasonable for the officers to believe other dangerous individuals could be inside the home."[3]   Id. at p. 15 (referencing Alatorre, 863 F.3d at 814-15).

Defendant's objection suggests law enforcement must physically observe the actual presence of a dangerous individual either entering or being in the house before a protective sweep would be justified.   The court acknowledges "[a] mere absence of information about whether anyone remains in a home does not justify a protective sweep" and " 'no information' cannot be an articulable basis for a sweep that requires information to justify it in the first place."   Nelson, 868 F.3d at 889 (internal citations and brackets omitted). But like in Cavely and Banks, "[w]hile the officers weren't expressly told that someone else was in [Villanueva's] house, their suspicion that [others may have

---

[3]Mr. Villanueva specifically did not object to the magistrate judge's "recitation of the testifying officers' training, experience, and background as testified to. . . . [and did not object to] the Court's recital of various gang activity investigations, intelligence, and/or operations that various testifying law enforcement officers have been engaged in[.]"   (Docket 293 ¶ 2).

17

been] inside was reasonable." Banks, 884 F.3d at 1015 (referencing Cavely, 318 F.3d at 996). Additionally, under the specific circumstances of Villanueva's arrest, the officers knew he was wanted on an arrest warrant for murder, was a member of the East Side Oldies gang and that the gang had a history of violent conduct and refusing to obey law enforcement orders. (Docket 289 at pp. 14-15). The court finds the magistrate judge's articulation of the information known to trained and experienced law enforcement officers is sufficient to give rise to the inference that a dangerous person may still be in the Villanueva's residence after he and three other men were removed.

Defendant's fifth objection to the R&R is overruled.

6.    MR. VILLANUEVA OBJECTS TO THE MAGISTRATE JUDGE'S
      LACK OF OBJECTIVE FINDINGS TO SUPPORT A PROTECTIVE
      SWEEP OF HIS HOME

Mr. Villanueva asserts "[t]he testifying officers' subjective motives and thoughts play no role in this analysis, it's an objective standard." (Docket 293 at p. 9) (referencing Buie, 494 U.S. 325). In addition to the alleged absence of specific facts concerning other dangerous individuals being in the Villanueva's residence, the defendant asserts there are no "other scene specific facts giving rise to officer safety concerns. . . . All officer safety concerns were known prior to approaching the residence which did not authorize a search warrant." Id.

The magistrate judge reported that Mr. Villanueva "does not dispute the government's summary of the facts supporting the officers' decision to conduct

18

a protective sweep." (Docket 289 at p. 14) (referencing Docket 287 at p. 12

n.1) (referencing Docket 266 at pp. 4-7). To be clear, that knowledge included

the following:

1. The officers all had experience working with Denver's gangs and were familiar with the gangs operating within Denver's Cole-Whittier neighborhood, where Defendant was arrested.[4] (Docket 289 at p. 2).

2. Sergeant Lombardi had 29 years of experience in law enforcement, 20 of which have been with the [DPD] gang unit. Id.

3. Sergeant Simmons had 20 years of experience with the DPD and Broomfield Police Department and had served in the gang unit. Id.

4. Officer Nielsen had worked for DPD since 2014 and had been exclusively assigned to the Cole-Whittier neighborhood. Id. at pp. 2-3.

5. Officer Kay had 14 years of experience with DPD and was a member of the gang unit at the time of Defendant's arrest. Id. at p. 3.

6. Sergeant Grove had 21 years of experience, 12 of which were with DPD, and at that time was a sergeant with the Vice and Narcotics Bureau which assists the gang unit with surveillance. Id.

7. Detective Hamel had two years of experience working in the Cole-Whittier neighborhood doing gang surveillance. Id.

8. Each officer testified that he is familiar with the neighborhood's East Side Oldies gang and its violent tendencies. Id.

---

[4]The magistrate judge found the officers' testimony credible. (Docket at p. 3).

9.   The Crips gang and the East Side Oldies gang have a long-standing feud in the Cole-Whittier neighborhood, resulting in shootings and other gun-related violence.   Id.

10.  The testifying officers described removing firearms from Oldies members; encountering Oldies members who would attempt to flee from law enforcement; arresting Oldies members and having other gang members attempt to cause a distraction or fire rounds in order to allow the arrestees to flee; and Oldies members partaking in drive-by shootings, homicides, and other shootings.   Id.

11.  Members of the Crips gang had recently shot members of the East Side Oldies gang in the neighborhood, and Denver police received information that the Oldies planned to retaliate against the Crips on the evening of November 28, 2017.   Id. at pp. 3-4.

12.  The [MGTF] . . . had a federal arrest warrant for Francisco Villanueva . . . for a homicide.   Id. at p. 4.

13.  Mr. Villanueva is an active Oldies gang member.   Id.

14.  Based on the information in the warrant, the tensions between the Crips and Oldies, and officers' experience with gang members carrying firearms and fleeing from law enforcement, the officers approached the arrest with heightened concerns.   Id.

15.  Tabitha Villanueva informed Officer Nielsen that Defendant, along with her four-year-old son, were inside the Villanueva residence.   Id.

16.  The front door of the residence was controlled by a locked security door.   Id. at p. 5.

17.  An unidentified male answered the door . . . and the male called [Mr. Villanueva] . . . to the door.   Id.

18.  Mr. Villanueva willingly exited the home and . . . complied with the arrest.   Id.

19. Three other unknown males were present and visible through the front door.   Id.

20. [T]he three [men were ordered] to step out of the home, patted them down for weapons, and had them sit down on the front porch.   Id.

21. An officer asked if anyone else was present in the home, and one of the individuals said, "My friend's stepson is inside," and told the officers the child was four years old.   Id.

22. Based on officer safety concerns, as well as concerns for the welfare of the child, Sergeant Lombardi immediately ordered a protective sweep of the home and welfare check of the child.   Id. at pp. 5-6.

23. The officers entered the home approximately two minutes after first knocking on the door.   Id. at p. 6.

The magistrate judge organized these facts and associated inferences into the summary of six factors identified earlier in this order.   The magistrate judge found "the officers' decision to conduct a protective sweep was objectively reasonable under the totality of the circumstances[.]"   Id. at p. 16.

The court finds the magistrate judge properly concluded there were "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334.   Those findings support the protective sweep in this case.

Defendant's sixth objection to the R&R is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's objections to the magistrate judge's report and recommendation (Docket 293) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 289) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 107) is denied.

Dated May 29, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE