UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FRANCISCO VILLANUEVA,<br>a/k/a "Gumby," a/k/a "Pancho,"<br>ADAN JAMES CORONA,<br>a/k/a "Ace Boogie,"<br><br>　　　　　Defendants. | CR. 17-50049-02 & 03-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Francisco Villanueva filed a motion *in limine* together with a legal memorandum seeking to prevent the government from using at trial any evidence seized at the time of defendant's arrest. (Dockets 334 & 336). The government filed a brief in resistance to defendant's motion and Mr. Villanueva filed a reply brief in support of the motion. (Dockets 398 & 405). For the reasons stated below, defendant's motion is granted.

## ANALYSIS

On November 29, 2017, law enforcement recovered "multiple firearms . . . ammunition, numerous cell phones, mail addressed to Francisco Villanueva, cocaine, heroin, scales, and $40,179" from his home in the Denver, Colorado, metropolitan area. (Docket 398 at p. 1). According to the government, the firearms seized were a "Smith & Wesson handgun, Glock handgun, SAR Arms handgun, [and an] Ithica shotgun[.]" Id. The search was

executed pursuant to a search warrant issued by a Colorado state court judge. Id.

Defendant asserts "[a]ll the contraband seized . . . was subjected to forensic testing. After all testing was completed, . . . none of it is linked, in any way, to the . . . shooting" of Vincent Brewer. (Docket 336 at p. 2). Specifically, defendant represents "[t]he guns seized . . . during the 2017 arrest were not the same guns that were discharged in the 2016 Brewer killing [and] . . . . it can be determined the phones seized were not in South Dakota during the 2016 . . . killing." Id. Defendant also points out that while it is alleged Mr. Brewer was killed "due to an unpaid methamphetamine debt. . . . [t]here was no methamphetamine seized . . . during the 2017 seizure." Id. Bottom line, defendant submits "[n]othing seized during Villanueva's arrest is linked in any way to the allegations" in this case. Id.

Instead, defendant believes this information would "improperly inflame the jury without any calculated relevant purpose." Id. If the information is relevant, defendant argues "the probative value is substantially outweighed by the danger of unfair prejudice." Id. at p. 3.

In response, the government asserts the "[a]mmunition found at Villanueva's residence . . . . are the same calibers of ammunition found at the scene of Brewer's murder." (Docket 398 at p. 2). The government argues "[t]he firearm[s] and ammunition . . . found at the house upon his arrest has a tendency to make the fact of his possession of ammunition and a firearm more

2

probable on the date of Brewer's murder." Id.  The government submits the evidence "also establishes that the defendant was familiar with firearms and ammunition as well as willing to possess them despite his prohibition." Id. The government claims the "evidence will corroborate witnesses and other evidence of defendant's firearm possession." Id. (referencing United States v. Medrano, 925 F.3d 993, 996-97 (8th Cir. 2019)).

The government asserts while no methamphetamine was found in defendant's residence, "[b]eing in possession [of] heroin and cocaine establishes the willingness of the defendant to possess other types of illegal substances, including methamphetamine." Id. at p. 3.  Defendant's "involvement in drug dealing will also be offered through witness testimony and from his Facebook account" according to the government, "so the drugs found at his house are corroborative of other admissible evidence.  The scales and large sum of U.S. currency support that the defendant was not just a user of substances, but rather involved in dealing." Id.  Admission of both the firearms and the drug related evidence at trial will, in the government's view, tend "to make it more probable that Villaneuva, and his gang the Eastside Oldies, was involved in distributing controlled substances." Id.  Because firearms "are tools of the drug trade" the government asserts this acknowledgement "makes it more probable that the victim was killed for his inability to pay his drug debt." Id. (referencing United States v. Street, 548 F.3d 618 (8th Cir. 2008)). Defendant's concern about the jury's improper use of this evidence, the

3

government argues, can be effectively dealt with by a limiting instruction.  Id. at p. 4.

In reply, defendant claims confusion by the jury as to the limited purpose of the Colorado evidence "will not be cured by a limiting instruction."  (Docket 405 at p. 3).  Because "[n]o reasonable juror is going to understand" the distinction, defendant argues this evidence will be used as "propensity evidence" such that the jury will "improperly apply it to the South Dakota charges[.]"  id.  Defendant contends "the Government . . . knows the conclusion which will be drawn by jurors if this irrelevant propensity evidence is admitted, drug dealers – especially ones with guns – exhibit a far greater propensity to commit the crimes as alleged."  Id. at p. 4 (emphasis omitted).

"[W]hen evidence of other crimes is so blended or connected, with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged."  Medrano, 925 F.3d at 996 (citing United States v. Fleck, 413 F.3d 883, 890 (8th Cir. 2005), quoting United States v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996)).  "It is well-settled that a district court 'has broad discretion in determining relevancy of proposed evidence.' "  Id. (citing United States v. Johnson, 516 F.2d 209, 214 (8th Cir. 1975)).  For this reason, the trial court's evidentiary rulings are reviewed for abuse of discretion.  United States v. Gustafson, 528 F.3d 587, 590 (8th Cir. 2008).

The evidence in this case apparently centers around Mr. Brewer's alleged failure to pay his methamphetamine debt to the Eastside Oldies gang and their apparent plan to make an example out of Mr. Brewer or kill him.  It also appears one or more members of the Eastside Oldies and other lay witnesses will testify about the plan.  Drugs, money and guns will play an important role for the government to prove its case that the gang, and particularly Mr. Villanueva and Mr. Corona, came from Colorado to South Dakota in October 2016 to execute the plan.  However, Mr. Villanueva's possession of firearms, drugs and money more than one year later would only be considered by the jury as propensity evidence to show defendant's bad character.

The court finds the evidence which is the subject of this order is not probative of the charged offenses.  This evidence would not "explain[] the circumstances" of the defendant's presence in Pine Ridge or "tend[] logically to prove [the] element[s] of the crime[s] charged[.]"  Medrano, 925 F.3d at 996. The 2017 evidence is not "admissible as an integral part of the immediate context of the crime[s] charged."  Id.  The court considered the prejudicial impact of this evidence under Rule 403 and finds its probative value, if any, is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403. Defendant's motion is granted.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motion *in limine* (Docket 334) is granted.

Dated July 26, 2021.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                UNITED STATES DISTRICT JUDGE